UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
-------------------------------------------------------
                                                :
TERRY KOVAC,                                    :        CASE NO. 5:05cv2276
                                                :
                    Plaintiff,                  :        JUDGE JAMES S. GWIN
                                                :
vs.                                             :        OPINION AND ORDER
                                                :        [Resolving Doc. No. 23]
LOWE'S HOME CENTERS, INC.,                       :
                                                :
                    Defendant.                  :
                                                :
-------------------------------------------------------

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE:

        In this case, Plaintiff Terry Kovac says Defendant Lowe's Home Centers, Inc.

discriminated against him by failing to accommodate a disability and retaliating against him.

Plaintiff Kovac also makes a state law claim for intentional infliction of emotional distress.

Defendant Lowe's moves for summary judgment.  [Doc. 23].  The plaintiff opposes summary

judgment, and the defendant has replied.  [Docs. 24, 25].  For the reasons set forth below, the

Court **GRANTS** the defendant's motion for summary judgment.

                            I.  Background

*A.  The Plaintiff's Employment*

        Plaintiff Kovac interviewed for a position at Lowe's Massillon, Ohio store in April 2000.

Lowe's extended a job offer and the plaintiff began work on May 15, 2000 as Building Materials

Department Manager.  The Massillon store has five zones, with each zone comprised of several

departments.  Department Managers report to a Zone Manager, also known as an Assistant Store

Manager.  Zone Managers report to the Operations Manager, who reports to the Store Manager.

-1-

Case No. 5:05cv2276
Gwin, J.

Lowe's Department Managers work a 48-hour weekly schedule, with frequent overtime.

On the plaintiff's first day of work, he completed a Lowe's employee questionnaire on which he stated: "I do have a leg injury I suffered when I was young, as of now I have no real problems . . . but problems may occur in the future." [Doc. 21, Ex. 1].  The plaintiff also confirmed that he could provide a physician's statement releasing him from any work restriction, and did not identify any accommodations he needed to perform his duties.  *Id.*  Near the time he started work, the plaintiff received copies of Lowe's employee manual.  The manual contained information on Lowe's anti-discrimination policy and employee code of conduct.

The plaintiff worked as Building Materials Department Manager from May 15, 2000 to July 7, 2000.  Near June 27, 2000, Dr. Magdalena Kovac cleared the plaintiff to maintain his restriction-free commercial driver's license so he could qualify to work as Delivery Department Manager. [Doc. 21, Pl. Dep. Tr. at 106-7, Ex. 12].  The plaintiff held that position from July 8, 2000 to May 24, 2002, working between 48 and 60 hours per week.

*B.  The Plaintiff's Request For Accommodation*

In February 2002, the plaintiff submitted a note from his physician, Dr. Kay, stating:

> Mr. Terry Kovac will have permanent work restrictions of primarily sedentary type of activities; driving is certainly within the range of his capabilities.  However, any activity that involves lifting, carrying, climbing, pushing, pulling, and prolonged standing of greater than four hours during a course of a day, I believe should be prohibited on a permanent basis.

[Doc. 21, Ex. 3].  The plaintiff's physician also completed a "physical demands analysis," that indicated the plaintiff should stand for no more than two-to-three hours at a time and avoid carrying objects weighing more than 45 pounds.  [Doc. 21, Ex. 2].  Lowe's personnel training coordinator Cindy Shank and store manager Tim Morian met with the plaintiff to determine whether he could

Case No. 5:05cv2276
Gwin, J.

continue to serve as Delivery Department Manager.  After he submitted his physician's notes, the

plaintiff continued with his 48-hour work schedule with some overtime, but abided by Dr. Kay's

recommended restrictions.

In May 2002, the plaintiff became the Building Materials Department Manager at the

Massillon store.  The plaintiff continued to abide by Dr. Kay's recommended restrictions in his new

position.  In January 2003, the plaintiff submitted a handwritten "Accommodation Evaluation Form"

from Dr. Kay to store personnel.  That forms stated that the plaintiff suffered ongoing complications

from a serious leg injury.  [Doc. 21, Ex. 12].  Dr. Kay recommended that the plaintiff's workday be

limited to eight hours, with "no lifting, carrying, climbing, pushing, pulling, or prolonged standing

of greater than [four hours] in [a] day."  *Id.*  Dr. Kay also noted that the plaintiff's essential job

functions were "sedentary type activity" and driving, and that the plaintiff could pursue his essential

job functions without accommodation.

When Lowe's personnel asked for clarification on the plaintiff's condition, Dr. Kay

submitted a second Accommodation Evaluation Form in early February 2003.  [Doc. 21, Ex. 11].

The new form recommended that the plaintiff's work schedule be limited to 40 hours per week,

"with ample recovery time."  Dr. Kay also recommended that the plaintiff refrain from lifting more

than 45 pounds, and from standing more than two-to-three hours at a time.  The plaintiff also

submitted a February 25, 2003, letter from Dr. Kay that restricted the plaintiff from "lifting,

carrying, climbing, pushing, pulling, crouching, squatting, kneeling, handling, reaching over head

and prolonged standing; all of which are no greater than two to three hours in an 8-hour work day."

[Doc. 21, Ex. 8].  Dr. Kay added: "All of these restrictions pertain to an 8-hour workday and he

should not exceed an 8-hour workday."  *Id.*

Case No. 5:05cv2276
Gwin, J.

Training coordinator Cindy Shank forwarded the plaintiff's various forms to Lowe's corporate offices.  The company approved a 40-hour weekly schedule for the plaintiff.  [Doc. 21, Shank Decl.  ¶ 13].  According to the plaintiff, at that point Lowe's "started rearranging [his] schedule to 40 hours a week.  So that worked out up until the end of [his] termination."  [Doc. 21, Pl. Dep. Tr. at 168].

*C.  The Management Training Program*

On October 25, 2003, the Plaintiff Kovac became the Massillon Store's Plumbing & Electrical Department Manager.  Soon after, the plaintiff applied to participate in Lowe's Management Training Program.  For admission into the training program, Lowe's required the applicant be able to work 50 hours per week.  At this time, the plaintiff was under a 40-hour restriction.  New Store Manager Ron Vyas and Operations Manager Ken Fetty  evaluated the plaintiff's qualifications for the training program by completing an evaluation questionnaire.  Vyas and Fetty submitted their evaluations to an external testing company that Lowe's retained to evaluate program applicants.  Based on the evaluations, the testing company determined that the plaintiff did not qualify for the program.  In November 2003, Vyas told Plaintiff Kovac that his application had been denied.  Vyas explained to Kovac that he needed to improve in the following areas:  "merchandising, communications and follow-up with associates, and knowledge of various reports."  [Doc. 23, Vyas Decl. ¶ 3].

In February 2004, the plaintiff submitted a note from another physician, Dr. Bashor.  The note stated:  "Please allow Mr. Terry Kovac to work the amount of hours according to his discretion up to 50 hrs./week max."  [Doc. 21, Pl. Dep. Tr. at 173, Ex. 5].  From February 2004 to his termination in May 2004, the plaintiff worked more than 50 hours per week only once.  [Doc. 21,

-4-

Case No. 5:05cv2276
Gwin, J.

Pl. Dep. Tr. at 188].

In March 2004, the plaintiff requested a transfer to vacant Plumbing Specialist position.  On March 27, 2004, the plaintiff began work as a Plumbing Specialist.  This transfer represented a demotion in terms of job responsibility, but the plaintiff's pay remained the same.  The plaintiff agreed that the transfer was "voluntary."  [Doc. 21, Pl. Dep. Tr. at 215].  The plaintiff requested the transfer due to his concerns that under-staffing in the Plumbing & Electrical Department were negatively impacting his job performance and evaluations as Department Manger.  *Id.* at 216-17.  According to the plaintiff, the Massillon store was understaffed in all of its departments.  *Id.* at 163.

*D.  The Plaintiff's Termination*

Lowe's Human Resources Management Guide provides that "any employee who commits workplace violence will be subject to disciplinary action up to and including termination and direction to stay away from Lowe's property."  [Doc. 21, Ex. 17 at 3].  Lowe's defines "workplace violence" to include aggressive or threatening behavior towards co-workers.  *Id.* at 2.  Lowe's New Employee Orientation Guide also prohibits "provoking a fight" on Lowe's property or "threatening, committing, or encouraging any act of violence in the workplace."  [Doc. 23, Shank Decl. Ex. A].

On Monday May 3, 2004, a customer told Manager Vyas that she heard the plaintiff threaten Plumbing Specialist Brian Toth at the store on May 1.  [Doc. 23, Vyas Decl. ¶ 4; Doc. 22, Vyas Dep. Tr. at 7].  Vyas investigated the incident by talking to Toth and Plumbing Department Manager Brennan McGarr.  *Id.*  Based on his investigation, Vyas learned that on May 1 Kovac became angry at Toth for not helping during store recovery at the close of business.  Kovac reportedly followed Toth when Toth began to walk away.  According to Toth, Kovac said "you're through" and "you better watch yourself."  [Doc. 22, Ex. F].  McGarr prepared a written statement of the incident,  in

-5-

Case No. 5:05cv2276
Gwin, J.

which he said Kovac yelled at Toth: "Anytime you want to finish this you come and see me and I'll

take you outside . . . . "  [Doc. 22, Ex. G].

Vyas met with the plaintiff to discuss the incident.  The plaintiff denied that he threatened

Toth.  [Doc. 21, Pl. Dep. Tr. at 359-60].     Vyas offered the plaintiff a transfer to a different

department, but the plaintiff declined.  *Id.* at 360.  Vyas asked the plaintiff to prepare a written

statement of the incident.  On May 5, 2004, Vyas and two other Lowe's managers met with the

plaintiff and terminated his employment.  [Doc. 23, Vyas Decl. ¶ 5].  According to Vyas, the

decision to terminate Kovac was his alone.  *Id.*

*E.  The Purported Instances Of Discrimination*

In his affidavit, Kovac describes several incidents of discrimination on the part of Lowe's

employees:

1.    Near March 2002, Store Manager Morian told Kovac that his original request for accommodation had been thrown away.

2.    Near February 2003, a non-supervisory co-worker obtained a copy of the plaintiff's Accommodation Evaluation Form from a store fax machine and discussed the plaintiff's condition with other workers without being disciplined.  The employee later apologized.

3.    In Fall 2002, the plaintiff missed a scheduled work day after working a full 60-hour schedule.  When Kovac returned to work, Assistant Store Manager Ken Fetty said: "What is this handicap s—?."  Fetty later apologized for the remark.

4.    The plaintiff's supervisor told him that he would need a doctor's permission for further work absences during the period of October 20, 2002 through December 20, 2002.

5.    In March 2004, the plaintiff received a poor performance evaluation for his work in the Plumbing Department that failed to acknowledge understaffing problems and his good results while Manager of the Building Supplies Department.

-6-

Case No. 5:05cv2276
Gwin, J.

6.    Manager Vyas wrote up the plaintiff in January 2004 for failure to clean-up his work area at closing, even though store understaffing contributed to the problem.

7.    The contents of Kovac's locker, including unidentified medical forms, disappeared after Kovac's firing.

8.    Toth's written statement about the May 1, 2004 confrontation did not say that Kovac physically threatened him.

9.    Kovac applied for the Management Training Program five times, but Lowe's denied his applications while accepting less senior employees.

The plaintiff characterizes these incidents as evidence of Lowe's discriminatory intent.

## II.  Legal Standard

Summary judgment is appropriate when the evidence submitted shows "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  In seeking summary judgment, the moving party has the initial burden of showing the absence of a genuine issue of material fact as to an essential element of the nonmoving party's case. *Waters v. City of Morristown*, 242 F.3d 353, 358 (6th Cir. 2001).  A fact is material if its resolution will affect the outcome of the lawsuit. *Daughenbaugh v. City of Tiffin*, 150 F.3d 594, 597 (6th Cir. 1998) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  In deciding whether the moving party has met this burden, a court must view the facts and draw all inferences in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970).  However, "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

Once the moving party satisfies its burden, the burden shifts to the nonmoving party to set forth specific facts showing a triable issue. *Matsushita Elec. Indus. v. Zenith Radio Corp.*, 475 U.S.

-7-

Case No. 5:05cv2276
Gwin, J.

574, 587 (1986).  It is not sufficient for the nonmoving party merely to show that there is some metaphysical doubt as to the material facts.  *See id.*  Additionally, the Court has no duty to "search the entire record to establish that it is bereft of a genuine issue of material fact." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479-80 (6th Cir. 1989).

A factual dispute precludes summary judgment only if it is material, that is, if it relates to a matter essential to adjudication.  The dispute must concern facts that, under the substantive law governing the issue, might affect the outcome of the suit.  *Anderson*, 477 U.S. at 248.  The factual dispute also must be genuine.  The facts must be such that if proven at trial a reasonable jury could return a verdict for the nonmoving party.  *Id.* at 248.  "The disputed issue does not have to be resolved conclusively in favor of the non-moving party, but that party is required to present significant probative evidence which makes it necessary to resolve the parties' differing versions of the dispute at trial." *60 Ivy St. Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987) (citing *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288-89 (1968)); *see also Celotex*, 477 U.S. at 322.

### III.  Analysis

*A.  ADA Claims*

Plaintiff Kovac makes two claims under the ADA: (1) Lowe's failed to accommodate the plaintiff's disability; and (2) Lowe's retaliated against the plaintiff based on his disability and requests for accommodation.

*1.  Statute Of Limitations*

The plaintiff must file a charge of discrimination with the EEOC within 300 days after an instance of workplace discrimination.  *Kovacevich v. Kent State Univ.*, 224 F.3d 806, 831 (6th Cir.

Case No. 5:05cv2276
Gwin, J.

2000).  The plaintiff filed his EEOC discrimination charge on June 7, 2004.  As a result, all claims

based on events that occurred before August 12, 2003 are time-barred.

### 2.  Failure To Accommodate

To establish a *prima facie* case that an employer failed to accommodate an employee's

disability, a plaintiff must offer evidence that (1) he is disabled, (2) the employer regarded him as

such, (3) he is otherwise qualified to perform his job with or without a reasonable accommodation,

(4) he requested an accommodation, and (5) the employer failed to provide the necessary

accommodation.  *See DiCarlo v. Potter*, 358 F.3d 408, 419 (6th Cir. 2004); *Myers v. Cuyahoga*

*County*, No. 05-3370, 2006 U.S. App. LEXIS 13693, at *10 (6th Cir. May 31, 2006).

To qualify as disabled under the ADA, the plaintiff must (1) have a physical or mental

impairment that substantially limits him in at least one major life activity, (2) have a record of such

an impairment, or (3) be regarded as having such an impairment.  29 U.S.C. § 705(20)(B); 42 U.S.C.

§ 12102(2).  "Major life activities" are "activities that are of central importance to daily life," while

"substantially limits" means "considerable or to a large degree."  *Toyota Motor Mfg. Co. v.*

*Williams*, 534 U.S. 184, 196 (2002).  An impairment that "only moderately or intermittently prevents

an individual from performing major life activities is not a substantial limitation under the Act."

*Mahon v. Crowell*, 295 F.3d 585, 590-91 (6th Cir. 2002).

Work itself may be considered a major life activity, but the plaintiff "must be precluded from

more than one type of job, a specialized job, or a particular job of choice."  *Sutton v. United Air*

*Lines*, 527 U.S. 471, 492 (1999).  Further, if "jobs utilizing an individual's skills (but perhaps not

his or her unique talents) are available, one is not precluded from a substantial class of jobs."  *Id.*

In the context of viewing work as a major life activity, "the term 'substantially limits' should be read

-9-

Case No. 5:05cv2276
Gwin, J.

'strictly to create a demanding standard for qualifying as disabled.'"  *Mahon*, 295 F.3d at 592

(citation omitted).

Once the plaintiff establishes his *prima facie* case of failure to accommodate, "the burden

shifts to the employer to demonstrate that the employee cannot reasonably be accommodated,

because the accommodation would impose an undue hardship on the operation of its programs."

*DiCarlo*, 358 F.3d at 419.

Plaintiff Kovac fails to make a *prima facie* case that Lowe's failed to accommodate him.

First and foremost, the plaintiff does not meet his burden of demonstrating that he is disabled.

Although the plaintiff undoubtedly suffers physical limitations due to his leg condition, his condition

does not substantially limit him in any major life activity.  At his deposition, the plaintiff agreed that

he can bend, squat, see, hear, speak, care for himself, and drive.  [Doc. 21, Pl. Dep. Tr. at 250-251].

The plaintiff can also perform routine home maintenance and improvement.  *Id.*

The plaintiff contends that his leg condition substantially limits him in the major life activity

of work.  Specifically, the plaintiff says that his condition substantially limits him from working

"heavy labor jobs."  [Doc. 24 at 15].  The plaintiff offers no analysis in support of his argument.

Regardless, the record demonstrates no such substantial limitation from a substantial class of jobs.

The plaintiff's condition did not prevent him from working a standard 40-hour workweek,

even though Lowe's generally required its managers to work beyond 40 hours.  Within the confines

of a 40-hour week, the plaintiff felt "like [he] was able to perform the essential functions of [his]

job."  [Doc. 21, Pl. Dep. Tr. at 281-82].  The fact that the plaintiff could not work beyond 40 hours

per week does not render him disabled under the ADA.  *See Stefanski v. W.W. Grainger, Inc.*, 155

Fed. Appx. 177, 185 (6th Cir. 2005); *Doren v. Battle Creek Health Sys.*, 187 F.3d 595, 599 (6th Cir.

-10-

Case No. 5:05cv2276
Gwin, J.

1999).

After the plaintiff lost his job at Lowe's, he worked as an airport baggage handler, and as a cement truck driver. [Doc. 21, Pl. Dep. Tr. at 49-51]. The plaintiff also applied for a loss prevention position at Wal-Mart, and for delivery positions with UPS and Federal Express. *Id.* at 91-94. The plaintiff felt qualified for those positions. Under these circumstances, the plaintiff does not demonstrate that his leg condition substantially limits him from a substantial class of jobs.

Nor does the fact that Lowe's was aware of the plaintiff's impairment and granted his requests for accommodation entail that Lowe's regarded him as disabled for purposes of the ADA. *See Linser v. Ohio Dept. of Mental Health*, No. 99-3887, 2000 U.S. App. LEXIS 25644, at *13 (6th Cir. Oct. 6, 2000).

Beyond the fact that the Plaintiff Kovac is not disabled for purposes of the ADA, the record indicates that Lowe's complied with his requests for accommodation. When the plaintiff requested a 40-hour workweek, Lowe's granted his request after receiving verification from his physician: "[T]hey started rearranging my schedule to 40 hours a week." [Doc. 21, Pl. Dep. Tr. at 168]. Lowe's also accommodated the plaintiff's request to work up to 50 hours per week at the plaintiff's discretion. *Id.* at 179. When Lowe's scheduled Kovac for more hours than he felt he could handle, Lowe's rearranged his schedule at Kovac's request. *Id.* at 180-82.

The plaintiff points to nothing in the record to indicate that Lowe's did not accommodate his lifting and other physical restrictions. For its part, Lowe's offers testimony of training coordinator Cindy Shank that Lowe's accommodated Kovac's physical restrictions, and provided him with breaks and places to sit. [Doc. 23, Shank Decl. ¶ 17]. The plaintiff also testified that he could take breaks and sit down to rest. [Doc. 21, Pl. Dep. Tr. at 260-62].

-11-

Case No. 5:05cv2276
Gwin, J.

Based on the record, the plaintiff fails to make a *prima facie* case that he is disabled and that

Lowe's failed to accommodate his physical restrictions.  The Court grants summary judgment to the

defendant on the failure to accommodate claim.

*3.  Retaliation*

The plaintiff's retaliation claim focuses on his exclusion from Lowe's management training

program and his May 2004 termination.  The plaintiff fails to make a *prima facie* case under either

approach.

To establish a *prima facie* case of retaliation under the ADA, the plaintiff must offer

evidence that (1) he engaged in a protected activity, (2) the employer knew of the protected activity,

(3) the employer took an adverse employment action against the plaintiff, and (4) there was a causal

link between the protected activity and the adverse action.  *Clark v. City of Dublin*, No. 05-3186,

2006 U.S. App. LEXIS  10932, at *9 (6th Cir. Apr. 27, 2006).  To establish a causal connection, the

plaintiff must offer direct evidence of retaliation, or knowledge coupled with closeness in time that

creates an inference of causation.  *Nguyen v. City of Cleveland*, 229 F.3d 559 (6th Cir. 2000).

If the plaintiff succeeds in making a *prima facie* case of discrimination, the burden then shifts

to the defendant to present a legitimate nondiscriminatory reason for the adverse employment action.

If the defendant carries that burden of production, the plaintiff then bears the burden of persuasion

to demonstrate that the defendant's proffered reasons were pretext for discrimination.  *Gourgy v.

Metro Nashville Airport Auth.*, 61 Fed. Appx. 958, 959 (6th Cir. 2003) (citing *Kocsis v. Multi-Care

Mgmt.*, 97 F. 3d 876, 883 (6th Cir. 1996)).

-12-

Case No. 5:05cv2276
Gwin, J.

### a. November 2003 Application To Management Training Program[1]

As discussed above with respect to the failure-to-accommodate claim, the plaintiff does not demonstrate that he is disabled within the meaning of the ADA.  The plaintiff engaged in protected activity by requesting accommodations, and Lowe's knew about his protected activity.  However, the plaintiff's *prima facie* case fails because he does not demonstrate a causal connection between his requests for accommodation and the denial of his application to the training program.  The plaintiff applied to the management training program approximately eight months after his February 2003 request for accommodation.   Such a temporal disconnect undermines any causal connection.  *See Parnell v. West*, No. 95-2131, 1997 U.S. App. LEXIS 12023, at *8 (6th Cir. May 21, 1997) (affirming summary judgment for defendant employer on retaliation claim and holding that "[a] time lag of seven months does not necessarily support an inference of a causal link; previous cases that have permitted a prima facie case to be made based on the proximity of time have all been short periods of time, usually less than six months").

Even if the plaintiff made a *prima facie* case, he fails to show that the defendant's proffered reason for the denial of his training application was pretext for discrimination.  A plaintiff can refute an employer's legitimate, non-discriminatory justification by showing that the proffered reason either (1) has no basis in fact; (2) did not actually motivate the decision; or (3) is insufficient to warrant the decision.  *Johnson v. Kroger Co.*, 319 F.3d 858, 866 (6th Cir. 2003).

The defendant says it denied Kovac's training application because he was unable to work 50 hours per week, and also because Kovac needed to improve in certain substantive areas.  When

---

[1] Although the plaintiff says he applied to the management training program five times, only the November 2003 application occurred within the EEOC limitations period.

-13-

Case No. 5:05cv2276
Gwin, J.

the plaintiff applied to the program in November 2003, he was under a 40-hour per week restriction.

The plaintiff says non-disabled employees received more favorable treatment.  That is not the case,

as the plaintiff was the only Massillon applicant to the management training program in November

2003.  The plaintiff otherwise offers no evidence that he met the full qualifications for the training

program in effect in November 2003.

The plaintiff cannot survive summary judgment merely by denying the defendant's proffered

reasons for its employment actions without offering evidence in support of his denial.  *See Mitchell*

*v. Toledo Hosp.*, 964 F.2d 577, 585 (6th Cir. 1992) (affidavits containing "conclusory allegations"

and "subjective beliefs" are "wholly insufficient" to establish pretext).  In the absence of such

evidence, the Court declines to second-guess the defendant's business judgment.  *See Bush v.*

*American Honda Motor Co.*, 227 F. Supp. 2d 780, 797 (S.D. Ohio 2002) ("Courts do not sit as super

personnel departments to second guess an employer's facially legitimate business decisions.").

### b.  May 2004 Termination

The plaintiff's claim arising out of his May 2004 firing also fails.  The plaintiff offers no

response to Lowe's argument on this issue.

The plaintiff does not demonstrate a *prima facie* case of retaliation.  Again, Kovac does not

show that he is disabled.  Further, the plaintiff fails to establish a causal connection between  his

requests for accommodation and his termination.  To establish a causal connection, the plaintiff must

offer direct evidence of retaliation, or knowledge coupled with closeness in time that creates an

inference of causation.  *Nguyen*, 229 F.3d at 563.  In this case, the plaintiff's various requests for

accommodation occurred several months before his termination.  *See Cooper v. City of North*

*Olmsted*, 795 F.2d 1265, 1272 (6th Cir. 1986) (reversing finding of retaliatory discharge and holding

Case No. 5:05cv2276
Gwin, J.

that "[t]he mere fact that [the plaintiff] was discharged four months after filing a discrimination

claim is insufficient to support an inference of retaliation").

Even if the plaintiff had made a *prima facie* case of retaliation, he does not demonstrate

pretext.  Store Manager Vyas fired the plaintiff based on his belief that the plaintiff violated Lowe's

rules by physically intimidating and threatening co-worker Brian Toth.  Even assuming Vyas

misinterpreted the incident with Toth, there is no evidence that Vyas used the incident as pretext to

retaliate against the plaintiff.  The plaintiff himself testifies that he had a "decent" relationship with

Vyas.  [Doc. 21, Pl. Dep. Tr. at  189].

*B.  Intentional Infliction Of Emotional Distress*

To recover on a claim for intentional infliction of emotional distress, a plaintiff must show

that the defendant, "by extreme and outrageous conduct intentionally or recklessly causes severe

emotional distress in [the plaintiff]."  *Yeager v. Teamsters Local 20*, 6 Ohio St. 3d 369, 374 (1983).

The emotional distress must be more than "trifling mental disturbance, mere upset or hurt feelings."

*Paugh v. Hanks*, 6 Ohio St. 3d 72, 78 (1983).  The distress must be "severe and debilitating."  *Id.*

The plaintiff offers no evidence that he has suffered a "severe and debilitating" emotional

injury.  Nor can he avoid summary judgment by merely resting on his allegations of distress.  The

Court grants summary judgment to Lowe's.

IV.  Conclusion

For the foregoing reasons, the Court **GRANTS** the defendant's motion for summary

Case No. 5:05cv2276
Gwin, J.

judgment.  [Doc. 23].  Accordingly, this action is terminated pursuant to Fed. R. Civ. P. 58.

IT IS SO ORDERED.

Dated: June 7, 2006                              s/          *James S. Gwin*
                                                 JAMES S. GWIN
                                                 UNITED STATES DISTRICT JUDGE